**SO ORDERED.**

**SIGNED this 06 day of January, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

**IN RE:**

**RICKY LYNN HARDISON and
ANNE BEASLEY HARDISON,**           Case No. 08-06973-8-RDD
                                   **Chapter 7**
     **Debtors.**

**BRANCH BANKING AND TRUST
COMPANY, et al.,**

     **Plaintiffs,**
                                   **Adversary Proceeding No.
                                   09-00030-8-JRL**
     **v.**

**SOUND BANKING COMPANY, d/b/a
SOUND BANK, et al.,**

     **Defendants.**
_____

### ORDER

     This case is before the court on the defendant's motion for summary judgment. On November 19, 2009, the court conducted a hearing on this matter in Raleigh, North Carolina.

### JURISDICTION AND PROCEDURE

     This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED FACTS

1. Anne Hardison (individually, "Hardison") and her husband, Ricky Hardison (collectively, "the debtors"), owned two properties located in Atlantic Beach, North Carolina that are relevant to this matter: a tract of land located at 123 East Atlantic Boulevard (the "Atlantic Boulevard Property"), and a property at 204 East Terminal Boulevard on which the debtors were attempting to construct a condominium triplex (the "Triplex Property").

2. On or about June 21, 2006, defendant Sound Bank loaned the debtors $1,500,000 to be used for the construction of the Triplex. This loan was secured by deeds of trust on both the Triplex Property and the Atlantic Boulevard Property. Sound Bank took first lien positions on both properties. The deed of trust on the Atlantic Boulevard Property was properly recorded on June 21, 2006.

3. In April 2007, as construction neared completion, the debtors became aware that they did not have sufficient funds remaining to complete construction of the Triplex Property.

4. Hardison approached Greg Powell ("Powell"), a loan officer at Sound Bank, to seek $600,000 in additional funds. However, Sound Bank was unable lend more than an additional $200,000 due to lending limits imposed by the FDIC.

5. Powell and Hardison discussed other options for the debtors to secure additional financing, including Hardison seeking funding from other financial institutions. Powell

mentioned the possibility of Sound Bank subordinating or releasing its deed of trust on the Atlantic Boulevard Property.

6. With Sound Bank's knowledge, Hardison sought additional funding from Branch Banking and Trust Company ("BB&T") in May or June of 2007.

7. In June 2007, BB&T agreed to loan the debtors $600,000 on the condition that Sound Bank release or subordinate its deed of trust on the Atlantic Boulevard Property, allowing BB&T a first lien position on the Atlantic Boulevard Property.

8. In an email dated June 06, 2007, Powell asked Hardison for an update on the status of her talks with BB&T and informed her that approval would be needed to release the lot if Sound Bank's lien was not going to be paid off completely.

9. At no time did Powell explicitly state that Sound Bank agreed to release or subordinate its interest in the Atlantic Boulevard Property.

10. Hardison then told BB&T that Sound Bank would agree to release or subordinate its interest in the Atlantic Boulevard Property.

11. BB&T retained Edith Mason ("Mason"), a real estate attorney in Morehead City, North Carolina, as the closing attorney in the $600,000 loan to the debtors.

12. BB&T gave closing instructions to Mason which required Mason to ensure that the loan would not close unless BB&T received a first lien position on the Atlantic Boulevard Property.

13. Mason conducted a title search on the Atlantic Boulevard Property which revealed Sound Bank's Deed of Trust.

14. Anita Gaus ("Gaus"), Mason's paralegal, phoned Sound Bank concerning the

loan. She spoke with Powell.

15. The content of this conversation is sharply disputed by the parties.

16. Gaus asserts that she inquired as to the fee for releasing the property and that Powell responded "there is no release fee." Powell contends that he informed Gaus that the release had not been approved and that he did not have authority to grant such approval.

17. Neither Gaus nor Mason made any other direct communication with any officer of Sound Bank concerning the loan or the Deed of Trust on the Atlantic Boulevard Property.

18. Neither Sound Bank, BB&T, or Gaus believed that Gaus had the authority to negotiate a subordination agreement on behalf of BB&T.

19. On or about July 9, 2007, Mason proceeded to close the loan, and BB&T disbursed the proceeds to the debtors.

20. After closing the loan, Mason sent an unexecuted copy of a Deed of Release for the Atlantic Boulevard Property to Sound Bank. The Deed of Release was not accompanied by any cover sheet, message, or instructions.

21. On or about July 25, 2007, the Director's Loan Committee of Sound Bank met to discuss the release of the Atlantic Boulevard Property and denied the release.

22. Sound Bank did not inform Hardison, Mason, or BB&T that it did not intend to sign the Deed of Release.

23. At no time did Hardison represent herself as an agent for either Sound Bank or BB&T, and at no time did either Sound Bank or BB&T consider her an agent of either bank.

24. There is no indication that either Sound Bank or BB&T intended to communicate with the other through Hardison.

25.     Other than Gaus's phone call to Powell and the unsigned Deed of Release Mason sent to Sound Bank, there was no communication between BB&T or anyone who could claim to be an agent of BB&T and Sound Bank.

26.     The debtors defaulted on both the loan from Sound Bank and the loan from BB&T, and filed the instant proceeding for relief under Chapter 7 of the Bankruptcy Code. The value of the collateral securing the two loans was not sufficient to cover principal of both loans.

27.     The debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 10, 2009.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

This adversary proceeding arises out of a lien priority dispute between the named plaintiff, Branch Banking and Trust Company ("BB&T"), and the named defendant, Sound Banking Company ("Sound Bank"). BB&T asserts that it is entitled to a first lien position because Sound Bank agreed to subordinate or release its interest in the Atlantic Boulevard Property to allow BB&T to assume a first lien position. Sound Bank maintains that it did not agree to subordinate or release its interest in the Atlantic Boulevard Property. In the adversary proceeding BB&T has filed claims against Sound Bank for breach of contract, negligent misrepresentation, equitable subordination, and unfair and deceptive trade practices. Sound Bank brings this motion for summary judgment on each of BB&T's claims.

**A. Breach of Contract**

The defendant moves for summary judgment on the plaintiff's claim for breach of contract. To establish a claim for breach of contract under North Carolina law, the plaintiff must demonstrate (1) the existence of a valid contract; and (2) the breach of the terms of that contract. Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). The issue here is whether BB&T and Sound Bank entered into a valid contract whereby Sound Bank agreed to subordinate its first lien position to BB&T.

"For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Chappell v. Roth, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (quotations omitted). It is undisputed that the plaintiff and the defendant never communicated directly, therefore a contract could only have been formed through the use of an

agent. Forbes Homes, Inc. v. Trimpi, 318 N.C. 473, 478, 349 S.E.2d 852, 855 (1986) ("If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone . . . .")

In order for a meeting of the minds to have occurred regarding a release or subordination agreement either Hardison, Mason, or Gaus would have to had been an agent of BB&T acting within the scope of her authority. Even viewed in the light most favorable to BB&T, it would have been absurd for Hardison to act as an agent for either lender. No reasonable bank would have relied upon the representations made by a loan recipient, who could be self-interested, that the recipient's first loan had been subordinated. Likewise, the closing attorney acknowledged in her deposition that she acted under the assumption that a release existed prior to her involvement in the loan closing. Although BB&T asserts that Mason acted as its agent in the loan closing process, an affidavit submitted by BB&T's loan officer, Mark Shouse ("Shouse"), specifically confirms that negotiating a release agreement was beyond the scope of the closing attorney's authority. In her deposition Mason admitted that she had no intention of entering into a contract on BB&T's behalf. Similarly, Gaus, who was the only direct line of communication with Sound Bank, stated in her deposition that she merely informed the defendant of the impending loan and inquired as to the amount of the release fee required by Sound Bank. The paralegal then asserted that when she was told no release fee was required she ended the conversation.

Based on the record, the court finds that there was no meeting of the minds between Sound Bank and BB&T, neither directly nor through an agent. Summary judgment is granted in favor of the defendant on the breach of contract claim.

**B. Negligent Misrepresentation**

As an alternative to its claim for breach of contract, BB&T requests relief on the basis of negligent misrepresentation. In North Carolina, "the tort of negligent misrepresentation occurs when "(1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care." Angell v. Kelly, 336 F. Supp. 2d 540, 549 (M.D.N.C. 2004) (citing Jordan v. Earthgrains Cos., 155 N.C. App. 762, 766, 576 S.E.2d 336, 339, *disc. review denied*, 357 N.C. 461, 585 S.E.2d 761 (2003)). North Carolina generally follows the Restatement view that liability is incurred by one who, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions," if the loss is suffered (1) by "persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it" and (2) through reliance on such information "he intends the information to influence or knows that the recipient so intends." Restatement (Second) of Torts § 552 (1977); see Davidson and Jones, Inc. v. County of New Hanover, 41 N.C. App. 661, 669, 255 S.E.2d 580, 585 (1979).

Sound Bank argues that the instant case is factually similar to Hospira v. Alphagary Corp., 671 S.E.2d 7 (2009), wherein the Court of Appeals of North Carolina held that liability cannot not result from misrepresentations conveyed to non-agent third parties because the plaintiff does not directly rely on the false information. However, the Hospira Court recognized that a misrepresentation made to an agent of the injured party is sufficient to create direct reliance by the injured party. 671 S.E.2d at 11. The defendant asserts that no such misrepresentation was made because none of the parties communicating with Sound Bank acted

as an agent for the purposes of negotiating a release agreement. This argument fails because although BB&T's closing attorney did not have authority to negotiate the release agreement, she acted as BB&T's agent for the purposes of the loan closing. By affidavit and in deposition Shouse asserted that Mason was instructed to confirm for BB&T that Sound Bank had agreed to subordinate or release its interest in the Property. Failure to carry out these instructions does not negate the agency relationship, nor does it estop BB&T from relying on the direct communication between its closing attorney's paralegal and Sound Bank's representative in which the alleged misrepresentation was made. Discrepancies over the representations made during this conversation require testimony to determine the credibility of the parties involved and the reasonableness of BB&T's reliance on the representations made therein.

Based on the facts viewed in the light most favorable to the plaintiff, the court finds that the elements of a cause of action for negligent misrepresentation can be met. Sufficient factual discrepancies appear in the record to deny summary judgment as to the negligent misrepresentation claim.

**C. Equitable Subordination**

The plaintiff seeks relief under the courts equitable powers in 11 U.S.C. § 510. Section 510 of the Bankruptcy Code provides that a court may subordinate one claim to another under principles of equitable subordination. 11 U.S.C. § 510(c) (2009). The goal of equitable subordination is to "undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results" In re FCX, Inc., 60 B.R. 405, 410 (E.D.N.C. 1986) (quotations omitted). A three part inquiry is used to determine whether subordination of a particular claim is equitable: (1) whether the claimant acted

inequitably, (2) whether the misconduct caused injury to another creditor, and (3) whether subordination is consistent with bankruptcy law. In re ASI Reactivation, Inc., 934 F.2d 1315, 1321 (4th Cir. 1991).  The court finds that there are disputed issues of material fact regarding alleged misconduct by Sound Bank and denies summary judgment as to this claim.

### D. Unfair and Deceptive Trade Practices

BB&T has submitted a claim for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes.  To establish a claim for unfair or deceptive trade practices, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Id.  Based on the record, the court finds that there are genuine issues of material fact regarding the elements of this claim and denies summary judgment.

### CONCLUSION

Based on the forgoing, the court grants the defendant's motion for summary judgment as to the plaintiff's claim for breach of contract.  The court denies the defendant's motion for summary judgment as to the plaintiff's claims for negligent misrepresentation, equitable subordination, and unfair and deceptive trade practices.

**"END OF DOCUMENT"**